**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**TONIA L. WHITE,**

**Plaintiff,**

**vs.** **CIVIL ACTION NO. 3:21-CV-00097**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER**
**OF SOCIAL SECURITY,**

**Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered February 9, 2021 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 12, 13)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for entry of an award for benefits or for remand (ECF No. 12); **GRANT** Defendant's request to affirm the decision of the Commissioner (ECF No. 13); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff, Tonia L. White, (hereinafter referred to as "Claimant"), protectively filed her applications on March 7, 2019 (Tr. at 307, 931-932, 933-941) alleging disability since February 14, 2019 because of lymphoma leukemia, rheumatoid arthritis, COPD, asthma, vision problems, and hyperparathyroidism (Tr. at 956). Her claims were initially denied on July 31, 2019 (Tr. at 307, 820-824, 825-829) and again upon reconsideration on November 6, 2019 (Tr. at 307, 832-834, 835-837). Thereafter, Claimant filed a written request for hearing on November 19, 2019 (Tr. at 838-839).

An administrative hearing was held on May 28, 2020 before the Honorable Nathan Brown, Administrative Law Judge ("ALJ") (Tr. at 527-557). On July 2, 2020, the ALJ entered an unfavorable decision (Tr. at 304-327). On August 20, 2020, Claimant sought review by the Appeals Council of the ALJ's decision (Tr. at 927-930). The ALJ's decision became the final decision of the Commissioner on December 17, 2020 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-7)

On February 8, 2021, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 9, 10) Subsequently, Claimant filed a Brief in Support of Judgment on the Pleadings (ECF No. 12), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 13). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 57 years old on the alleged onset date and considered a "person of advanced

age" during the underlying proceedings. See 20 C.F.R. §§ 404.1563(e), 416.963(e). (Tr. at 531) Claimant completed high school and last worked as a paralegal in a law firm. (Tr. at 957)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims, 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental

capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

In this case, the ALJ found Claimant met the insured status requirements through September 30, 2024. (Tr. at 310, Finding No. 1) At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since the amended alleged onset date of February 14, 2019. (Id., Finding No. 2) At the second inquiry, the ALJ found that Claimant had the following severe impairments: leukemia; lymphadenopathy; right knee osteoarthritis; Coombs positive autoimmune hemolytic anemia; degenerative disc disease; sinus bradycardia; hypothyroidism; hyperparathyroidism; asthma; and obstructive sleep apnea. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 312, Finding No. 4) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work except:

> She can frequently reach overhead bilaterally. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance frequently, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can never work at unprotected heights, can never work around moving mechanical parts, and can operate a motor vehicle occasionally. She can work in weather frequently, in humidity frequently, in atmospheric conditions frequently, in extreme cold frequently, in extreme heat frequently, and in vibration frequently. She can frequently talk.

(Tr. at 314, Finding No. 5) At step four, the ALJ found Claimant was capable of performing her

past relevant work as a paralegal; a composite job of telephone order clerk, customer service representative, and supervisor; and telephone solicitor. (Tr. at 319, Finding No. 6) Finally, the ALJ determined Claimant had not been under a disability since February 14, 2019 through the date of the decision. (Tr. at 320, Finding No. 7)

**Claimant's Challenges to the Commissioner's Decision**

Claimant argues that the ALJ's decision is not supported by substantial evidence and argues that the ALJ unfairly and unreasonably assessed the opinions provided by consultative examiners Anthony Karam, D.O. and Steven Nutter, M.D., which substantiate Claimant's numerous conditions[1] as well as her symptomology[2] (ECF No. 12 at 5-8). Claimant asserts that this evidence, in addition to her age, show that she would "grid out" at the sedentary level pursuant to Grid Rule 201.06 or even at the light level pursuant to Grid Rule 202.06[3], however, the ALJ's "failure to give proper consideration to the medical evidence of record detrimentally impacted the credibility determination", the RFC assessment, as well as "the Grid review", as none was done in this case. (Id. at 8) Additionally, Claimant contends that the Appeals Council failed to consider the new and material evidence she submitted which demonstrate the ongoing severity of her impairments. (Id. at 8-9) Claimant asks for reversal with an award for benefits, or for remand. (Id. at 9-10)

---

[1] Claimant listed her impairments: leukemia; lymphadenopathy; right knee osteoarthritis; Coombs positive autoimmune hemolytic anemia; degenerative disc disease; sinus bradycardia; hypothyroidism; hyperparathyroidism; asthma; obstructive sleep apnea; GERD; rhinitis; upper respiratory infection; COPD; small vessel disease of the brain; adnexal mass; ovarian cysts; vitamin D deficiency; cataracts; and rheumatoid arthritis. (ECF No. 12 at 6-7)

[2] Claimant's testimony regarding her symptoms included: tired constantly; wakes up constantly during the night; pain in liver and spleen area; chronic shortness of breath; pain constant daily; muscle spasms; numbness in left side of face, hands, arms; "never a pain-free day"; 12 to 15 bad days in a month; 4 to 5 naps per day; difficulty sitting; cannot stand/walk 6 hours out of 8 hour workday; cannot sit 6 hours out of 8 hour workday; and not able to focus (Id. at 7).

[3] In support of her argument, Claimant also submitted a copy of the pertinent Medical-Vocational Guidelines (ECF No. 12-1).

In response, the Commissioner contends that the RFC assessment is supported by substantial evidence and the ALJ provided a thorough explanation for same, discussing each of Claimant's alleged impairments and her limitations therefrom; the evidence fails to prove any greater functional limitations not accounted for in the RFC. (ECF No. 13 at 5-7) With respect to Dr. Karam's opinion, the ALJ correctly observed that his report documented generally unremarkable findings, which support the ALJ's RFC assessment; the ALJ also noted that Dr. Nutter's findings from a June 2010 examination in connection to one of Claimant's prior claims also documented generally normal findings. (Id. at 8) Further, Dr. Karam's report was consistent with the other medical evidence of record, as well as with the prior administrative consultants' opinions. (Id. at 8-9) Dr. Karam's report and the prior administrative decisions provided strong support for the ALJ's RFC finding. (Id. at 9) The Commissioner states that Claimant's argument that the ALJ failed to find she "grids out" pursuant to the Medical-Vocational Guidelines is legally incorrect, as he found she could perform her past relevant work at step four, thus the inquiry ended at that point, and he was not obligated to proceed to the next step. (Id. at 10) Further, the Appeals Council correctly determined that the additional medical evidence submitted by Claimant dated prior to the ALJ's July 2, 2020 decision would not have a reasonable probability of changing the outcome of the case because it was cumulative and duplicative to the evidence already before the ALJ. (Id. at 11-12) The Appeals Council also appropriately determined that the additional evidence that was dated after the July 2, 2020 decision did not relate to the period at issue before the ALJ, but even if it did, it fails to show a reasonable probability that the additional evidence would change the outcome of the ALJ's decision. (Id. at 12-13)

Finally, the Commissioner contends that substantial evidence supported the ALJ's decision

and asks this Court to affirm. (Id. at 14)

**The Relevant Evidence of Record**[4]

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

Consultative Examiners Reports:

In June 2010, Claimant underwent an evaluation by Stephen Nutter, M.D., on behalf of the Agency in connection with one of her prior disability claims. (Tr. at 318, 1073-1080) The examination showed mild findings, although Dr. Nutter noted some pain and tenderness throughout the entire abdomen, but no masses or organomegaly. (Tr. at 318, 1077, 1075) Dr. Nutter noted no hepatomegaly, jaundice, ascites, spider angiomas, palmer erythema, asterixis or encephalopathy. (Id.) Claimant complained of back and neck pain, and tenderness to palpation of the paraspinal muscles of the lumbar spine; range of motion abnormalities were noted in the lumbar spine. (Tr. at 318, 1076, 1077) Straight leg raise testing was negative. (Id.) The Claimant had tenderness and decreased range of motion in both shoulders. (Tr. at 318, 1075) There were no sensory abnormalities and she had normal reflexes. (Tr. at 318, 1076) Dr. Nutter noted she was not short of breath with mild exertion or in the supine position; her lungs were clear of any wheezes, rales, or rhonchi and her pulmonary function study was normal. (Tr. at 318, 1077, 1078-1080)

In June 2019, Claimant underwent another evaluation by Anthony B. Karam, D.O., on behalf of the Agency in connection with her present claims. (Tr. at 318-319, 1551-1556) On examination, she exhibited full range of motion in her neck and in all peripheral joints; there was

[4] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

no evidence of redness, swelling, heat, or deformity. (Tr. at 1552) She had pain in both shoulders with abduction beyond 120 degrees; range of motion testing of the lumbar spine showed Claimant could flex to 90 degrees, with straight leg raising to 90 degrees bilaterally in the seated and supine position; she did not complain of leg pain with these maneuvers. (Tr. at 1553) There was no paraspinal muscle spasm to palpation and no evidence of scoliosis. (Id.) Claimant's gait was normal, and she was able to ambulate without the use of an assistive device; muscle strength was 5/5 in all major muscle groups; she was able to walk on her toes, heels, and tandem walk. (Tr. at 319, 1053) She had normal reflexes, 5/5 grip strength bilaterally, and intact sensation in both upper and lower extremities. (Id.) A pulmonary function test showed no restriction with no significant obstruction. (Tr. at 1553, 1555-1556) Dr. Karam opined that the examination demonstrated "some kyphosis of the upper thoracic spine and would anticipate difficulties with repetitive heavy lifting. Apart from this, her physician examination today did not document any loss of function." (Tr. at 318, 1054)

MRI of Lumbar Spine:

In March 2020, an MRI taken of Claimant's lumbar spine indicated vertebral bodies maintain normal height and alignment, and multilevel degenerated changes: at T11-12, a left paracentral disc protrusion produces mild spinal canal stenosis; at T12-L1, a disc bulge produces mild spinal canal stenosis; at L3-4, a disc bulge and facet arthropathy produce mild spinal canal stenosis and mild bilateral neural foraminal stenosis; at L4-5, a disc bulge and facet arthropathy produce mild bilateral neural foraminal stenosis; and at L5-S1, a disc bulge and facet arthropathy produce mild bilateral neural foraminal stenosis. (Tr. at 316, 1745-1746)

Physical Examination from April 2020:

In April 2020, Claimant reported low back pain that radiated down both legs as well as bilateral leg weakness; she indicated that her leg was giving out on her (Tr. at 316, 1873-1886). She also reported pain and stiffness of the neck and bilateral arm weakness. (Id.) On examination, severe limitation of range of motion in the lumbar and cervical spines were noted. (Tr. at 317, 1874) It was also noted that the examination was a tele-health video encounter, thus limited, as the provider was unable to fully ascertain visual examination, strength, tone, reflexes and some aspects of coordination. (Tr. at 317, 1874) An MRI was ordered for Claimant's cervical spine, and a referral to a neurosurgeon; Claimant was prescribed ibuprofen. (Tr. at 317, 1873-1886, 2001-2039)

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that she had fallen years ago and tore the rotator cuff in her right arm; she stated that she is unable to lift that arm as high as the left, including overhead, and that it "gives out" on her. (Tr. at 534)

Claimant also stated that she has lymphoid leukemia, which makes her stay tired, and that she is constantly waking up during the night. (Tr. at 535) She has elevated liver enzymes, which causes her constant pain as well. (Id.) She receives treatment for this condition every month to every three months, and she has had iron infusions. (Id.) Testing showed she had no iron in her bone marrow as well as a vitamin D deficiency; she also has low white blood count. (Tr. at 535-536)

Claimant testified that she has COPD for which she takes numerous kinds of inhalers, and that she is to be referred to a lung specialist because she has chronic shortness of breath. (Tr. at 536) She also uses a CPAP machine for her sleep apnea. (Id.)

She has cataracts in both eyes, though her right eye is worse, however, she is not a candidate for surgery yet. (Id.)

Claimant testified that her symptoms from hypothyroidism make her "choke a lot" and there is always a very painful side of her throat, also, she has weaker bones because she does not absorb calcium. (Tr. at 537)

Claimant suffers from arthritis in her neck, back, hands, feet, knees and legs which causes her pain with movement as well as pain in her knees and hips – she testified that she has pain constantly. (Id.) She has learned to walk beside a wall so if she starts to fall, she can grab ahold of it, or it or she will have her granddaughter walk with her. (Id.)

Claimant also endorsed having muscle cramps, especially in her feet as well as numbness in her face, arms and hands. (Tr. at 538)

Although Claimant does not have a pain free day, she stated that she has good days and bad days: on a good day she may be able to shop a little bit, but on bad days she feels it would be better to go to sleep and not get back up. (Tr. at 538-539) She estimated she has about 12 or 15 bad days in a month. (Tr. at 539) She also suffers from fatigue daily, maybe due to her pain, leukemia, or even some of her medication; she takes four or five naps a day for about 15-20 minutes, depending on her pain. (Tr. at 540) She complained that her kidneys hurt "to where if I'm not close to a bathroom I don't make it." (Id.)

Claimant testified that she cannot walk a city block, but she can shop in stores and parks close; if necessary, she has her granddaughter finish her shopping while she sits in the car with her foster daughter. (Tr. at 541) She has problems standing and cannot lift anything, including her purse. (Tr. at 541-542) She cannot sit very long, she moves positions to take pressure off her hips,

and then it begins to hurt her legs and feet. (Tr. at 542) She has her granddaughter and foster daughter perform household chores. (Id.) Claimant denied having problems with personal hygiene, although she has her granddaughter listen while she takes a shower in case she fell; she cannot sit in a bathtub because she cannot get out of it. (Id.)

Claimant testified that she is unable to work an 8-hour day even if she were to sit for six hours during that time due to her pain in her hips, legs and back; the pain also makes her nauseated. (Tr. at 543) She does drive, but only for short distances because of her hip pain. (Id.) She indicated she also has trouble realizing whether a light is red or green. (Tr. at 544)

In response to questioning from the ALJ, Claimant explained that her healthcare provider wrote a letter on her behalf to excuse her from jury duty due to her low white blood count because she needed to avoid being around others. (Tr. at 551) Due to her low white blood count, she stated that her chronic lymphoma leukemia is not in remission and that she will have this condition until the day she dies. (Tr. at 552)

Vocational Expert ("VE") Testimony:

The VE testified that Claimant's past relevant work as a paralegal is described as light, skilled, but medium as Claimant performed it; her composite job, consisting of a telephone order clerk, customer service representative, and supervisor was sedentary, semi-skilled to skilled and sedentary as Claimant performed it; her work as a telephone solicitor was also sedentary and semi-skilled and sedentary as Claimant performed it. (Tr. at 553) In response to the controlling hypothetical of an individual of Claimant's age, education, work experience and RFC, *supra*, the VE testified that the individual could perform Claimant's past work as a paralegal, telephone order clerk, call center representative or customer service representative, customer service supervisor

and telephone solicitor, though her past work as a paralegal as she actually performed it would be eliminated. (Tr. at 554-555)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

Consideration of Impairments:

As an initial matter, although Claimant lists her numerous conditions and ailments found throughout the medical record, at no time does she specify how these conditions, either singly or in

combination, have affected her functioning.[5] Courts within this Circuit have long recognized, however, that a diagnosis or medical condition is not necessarily disabling; there must be a showing of a related functional loss. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (internal citation omitted). Further, Claimant also does not specify which impairment specifically meets or equals any Listing, and only conclusively asserts that her impairments justify a finding that she is disabled pursuant to the Medical-Vocational Guidelines (ECF No. 12 at 8). Because Claimant only offers a conclusory argument that the ALJ failed to find she "grids out" based on an alleged failure to consider her impairments, to that extent, Claimant has essentially waived this challenge on appeal. Erline Co. S.A. v. Johnson, 440 F.3d 647, 653 n.7 (4th Cir. 2006) (a "[c]onclusory remark is insufficient to raise on appeal any merits-based challenge"); accord Sedghi v. PatchLink Corp., 440 Fed. App'x 165, 167 (4th Cir. 2011) ("By advancing only a conclusory argument, Sedghi has likely waived the issue.").

In any event, as noted *supra*, Claimant bears the burden of proving she has an impairment or combination of impairments that meets or medically equals the at severity of Listing requirements. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).[6]

The Regulations provide:

---

[5] As noted *supra*, at footnotes 1 and 2, Claimant merely lists her numerous diagnoses and conditions and asserts these corroborate her alleged symptomology. See, e.g., 20 C.F.R. §§ 404.1521, 416.921 ("We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).")

[6] The Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

See 20 C.F.R. §§ 404.1523(c), 416.923(c). When confronted with a combination of impairments, an adjudicator must not only acknowledge "the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The Fourth Circuit has held that the ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity. Id. In short, the ALJ must analyze the cumulative or synergistic effect that the various impairments have on Claimant's ability to work. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

"The Listing of Impairments . . . describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." See 20 C.F.R. §§ 404.1525(a), 416.925(a); Sullivan v. Zebley, 493 U.S. 521, 532 (1990). To qualify for benefits, Claimant must show that her combination of impairments is "equivalent" to a listed impairment, and she "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." See Id. at 531. Claimant must meet all, not just some, of the criteria for a listing to apply. Id. at 530.

It is important to note that at the second step in the sequential evaluation process, the ALJ found numerous impairments that were not severe enough to have significantly limited Claimant's

ability to perform basic work activities: gastroesophageal reflux disease (GERD); rhinitis; upper respiratory infection; chronic obstructive pulmonary disease (COPD); small vessel disease of the brain; adnexal mass; ovarian cysts; vitamin D deficiency; cataracts; and rheumatoid arthritis. (Tr. at 310-312) The ALJ specifically noted that the evidence supported the conclusion that none of these conditions, either singly or in combination, resulted in significantly limited Claimant's ability to perform basic work activities (Id.).

Next, at the third step of the sequential evaluation process, the ALJ first evaluated Claimant's impairments under Section 1.00, which pertains to the musculoskeletal system: the ALJ noted that Claimant's examining and treating physicians' reports did not document ambulatory deficits, instead reporting a normal gait and ambulation without an assistive device, 5/5 muscle strength in all major muscle groups, and normal reflexes. (Tr. at 312, 1551-1557) The ALJ also considered the evidence under Acquiescence Ruling 15-1(4) concerning Claimant's degenerative disc disease, and noted the ALJ further noted that Claimant's severe impairment also did not meet criteria under Listing 1.04(A), which concerns disorders of the spine, "because the record does not reflect motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied sensory or reflex loss and positive straight-leg raising test (sitting and supine)." (Tr. at 312) Also, the ALJ found this impairment did not meet Listing 1.04(B) because there was no evidence of spinal arachnoiditis, and did not meet Listing 1.04(C) because there was no evidence of lumbar spinal stenosis resulting in inability to ambulate effectively. (Id.) He noted that the March 2020 MRI revealed mild spinal canal stenosis and mild bilateral neural foraminal stenosis (Tr. at 312, 1746), but physical examination revealed normal motor strength, mild diffuse tenderness of the lower lumbar spine, normal gait, and intact sensation (Tr. at 312, 1736).

Regarding Claimant's asthma, the ALJ also recognized that while this impairment is severe, it failed to meet criteria under Listing 3.03, "because her forced vital capacity levels were above those levels required" and the pulmonary function studies from June 2019, November 2019, and January 2020 were normal (Tr. at 312, 1791, 1798, 1805). He also observed Claimant "has not experienced exacerbations or complications requiring three hospitalizations within a 12-month period and at least thirty days apart." (Tr. at 312-313)

Regarding Claimant's sleep apnea, the ALJ noted that such sleep-related breathing disorders, which falls under Listing 3.00P, this impairment had not reached a level that would cause the other impairments to meet Listing criteria. (Tr. at 313)

Regarding Claimant's sinus bradycardia, the ALJ also found this impairment did not meet Listing 4.05 because there was no evidence it was uncontrolled "with recurrent episodes of cardiac syncope or near syncope despite prescribed treatment, and documented resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing[.]"; the ALJ observed that "[a] Holter monitor from April 2020 indicated her symptoms did not correlate with arrhythmia" (Tr. at 313, 2039).

The ALJ next considered Claimant's anemia, also finding this impairment did not meet requirements under Listing 7.05, as the evidence shows this impairment is adequately managed with infusions and she had not been hospitalized for it. (Tr. at 313)

The ALJ then considered Claimant's endocrine disorders, observing that thyroid disorders are not evaluated under their own listing, though their related symptoms should be evaluated under the Listings pursuant to Social Security Ruling ("SSR") 14-3p. (Id.) Nevertheless, the ALJ found that Claimant's "thyroid disorders do not cause any severe limitations that would be close to

meeting or equaling any of the listings." (Id.) The ALJ noted that a CT scan of the chest from May 2020 showed no evidence of a thyroid nodule, and that she received minimal treatment for her thyroid disorders. (Tr. at 313, 1907) The ALJ stated that Claimant's thyroid disorders were considered in her RFC, however. (Tr. at 313)

Regarding Claimant's lymphadenopathy, the ALJ found this impairment failed to meet Listing 13.05 requirements, as there is no showing of recurring aggressive lymphoma following initial anticancer therapy, no evidence of indolent lymphoma requiring initiation of more than one anticancer treatment regimen within a period of twelve consecutive months, no evidence of Hodgkin lymphoma with failure to achieve clinically complete remission, or recurrent lymphoma within twelve months of completing initial anticancer therapy, and no evidence of mantle cell lymphoma. (Id.) The ALJ also found Claimant has not undergone bone marrow or stem cell transplantation. (Id.)

Finally, with respect to Claimant's leukemia, the ALJ also determined this impairment failed to meet Listing 13.06, noting that her leukemia is managed with regular monitoring and infusions (Tr. at 313, 1558-1586, 1887-1998, 1999-2039, 2044-2077). Additionally, the ALJ recognized that Claimant had neither received chemotherapy since December 2018, nor required a bone marrow or stem cell transplantation. (Tr. at 313-314)

The ALJ also observed that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." (Tr. at 314)

Clearly, the ALJ considered the medical evidence from the relevant time period. As discussed *supra*, the ALJ did consider this evidence in making his third step determination, thus, to the extent that Claimant argues that the ALJ failed to consider and evaluate the combined effects

of her impairments, the undersigned **FINDS** this argument lacks merit. Additionally, to the extent that Claimant contends the ALJ failed to consider the medical records provided by her treating physician(s), or even examining sources, the undersigned **FINDS** this contention also lacks merit.[7]

Evaluation of Symptoms:

Claimant has argued in a conclusive fashion that the ALJ failed to properly consider the medical evidence of record which "detrimentally impacted" the credibility determination and the residual functional capacity analysis – primarily because the ALJ did not find Claimant "grids out." (ECF No. 12 at 8, 9) Thus, to the extent she contends the ALJ failed to consider and evaluate Claimant's reported symptomology from the relevant period, the written decision demonstrates otherwise.

SSR 16-3p[8] clarifies the evaluation of symptoms, including pain: 20 C.F.R. §§ 404.1529, 416.929 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

---

[7] On judicial review, the Commissioner's factual findings are " 'conclusive' if supported by 'substantial evidence.' " See Biestek v. Berryhill, 139 S.Ct. 1148, 1153 (2019). Given that substantial evidence is "more than a mere scintilla" and "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 1154 (internal quotation omitted).

[8] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p and therefore governed the ALJ's decision herein. See, SSR 16-3p, 2016 WL 1131509. The new Ruling eliminates the use of the term "credibility" from SSA policy because the Regulations do not use that term: "we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." See, 2016 WL 1119029, at *1.

The Ruling further directs that an adjudicator must use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ thoroughly reviewed Claimant's alleged conditions and impairments, and how they impacted her ability to function throughout the written decision. The ALJ acknowledged Claimant's complaints regarding her shoulders, lymphoma leukemia, hypothyroidism, arthritis in her neck, back, knees, hands, and feet, as well as her pain and stiffness in her neck, back and hip pain, muscle spasms in her feet, and that she alleged that her pain is constant, that she is always tired, has trouble sleeping, cannot walk or sit very long and even has issues recognizing red traffic lights. (Tr. at 314-315) The ALJ noted that Claimant reported she quit working because "she could not keep up with her work" and that she "could not focus." (Tr. at 315)

Next, the ALJ performed the requisite credibility/consistency analysis endorsed by Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1995), and that from his review of the medical and other evidence of record, he determined that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" and highlighted the aspects that undercut her allegations of totally disabling symptoms (Tr. at 315-319):

While the ALJ acknowledged Claimant had been diagnosed with lymphoid leukemia in 2018 (Tr. at 315, 1115-1423, 1887-1998), and that she had reported having abdominal pain, night

sweats, weight loss, and fatigue (Tr. at 315, 1115-1423, 1558-1586), he noted that following her chemotherapy treatment, scans indicated this condition was stable, despite it not having reached remission, and that it was adequately managed with infusions and regular monitoring (Tr. at 315-316, 1145, 1563, 1566, 1558, 1558-1586, 1887-1998, 1999-2039, 2044-2077).

Though Claimant developed Coombs positive autoimmune hemolytic anemia (Tr. at 316, 1115-1423, 1558-1586), the ALJ also noted that treatment notes showed that it had improved with iron supplements and folic acid, and that her blood counts were stable, and she only reported mild fatigue in February 2020 (Tr. at 316, 1587-1620, 1887-1998, 2044-2077).

The ALJ also discussed Claimant's complaint of right knee pain in February 2020 that "had been hurting for one day", and upon examination, she exhibited tenderness to palpation and pain with motion/ambulation (Tr. at 316, 1999-2039, 2019). The ALJ further noted that following a diagnosis of osteoarthritis, Claimant was treated conservatively with ibuprofen and that she had not seen a specialist for her knee, although an April 2020 exam showed difficulty with straightening her leg due to pain and a positive Patrick's test (Tr. at 316, 1871-1886).

The ALJ discussed the medical record concerning Claimant's back and neck issues as well: noting Claimant sought emergent care for low back pain in May 2019, and that x-rays taken at the time showed discogenic degenerative changes, and that she was diagnosed with degenerative disc disease of the lumbar spine and treated with pain medication (Tr. at 316, 1425-1527). He also noted that Claimant complained of back pain and stiffness in both her legs in October 2019, and that a physical examination showed tenderness to palpation and muscle spasms of the lumbosacral spine, pain with motion, and positive straight leg raising test on the right, and that she was treated with pain medication. (Tr. at 316, 1715-1724) Next, the ALJ noted that Claimant again sought

emergency room treatment for back pain in December 2019, that she reported radiated to her hips and legs with some tingling and numbness in both legs (Tr. at 316, 1735-1740). It was noted that a physical examination showed normal motor strength; mild, diffuse tenderness of the lower lumbar spine; normal gait; intact sensation; and an x-ray showed no subluxation, disc narrowing osteophyte formation at L3-S1, and no acute abnormality (Tr. at 316, 1736, 1740). The ALJ noted Claimant attended physical therapy from January 2020 to February 2020 (Tr. at 316, 1752-1761, 1815-1867) though she continued to report back pain (Tr. at 316, 1999-2039) and that a later MRI of the lumbar spine showed some abnormalities (Tr. at 316,1746). The ALJ further noted Claimant continued to complain of low back pain radiating down both legs, bilateral leg weakness, that her leg was giving out on her, as well as pain and stiffness in her neck and bilateral arm weakness in April 2020 (Tr. at 316, 1871-1886), and that a physical examination showed severe limitation of range of motion in her lumbar and cervical spines (Tr. at 317, 1873). However, the ALJ also noted that the physical examination was conducted by audio-video and that the provider did not conduct a full examination. (Id.) The ALJ found that "[t]he overall treatment notes show the claimant's degenerative disc disease has been treated conservatively with medication and physical therapy." (Tr. at 317, 1871-1886, 1999-2039)

The ALJ also explored the treatment record concerning Claimant's sinus bradycardia, from which Claimant reported having palpitations, shortness of breath, and lightheadedness. (Tr. at 317, 1425-1527, 1999-2039) However, the ALJ also noted that Claimant received only "minimal treatment" for this impairment, and that she did not require hospitalization for it. While the ALJ recognized that Claimant had diagnoses of hypothyroidism and hyperparathyroidism (Tr. at 317, 1621-1632), he also noted that CT scans showed no evidence of thyroid nodule, and examinations

revealed no masses of thyromegaly, no jugular venous distension, no lymphadenopathy (Tr. at 317, 1694, 1705, 1907), that she received "minimal treatment" for these disorders and did not take medication for them. Further, although the ALJ recognized Claimant had a history asthma (Tr. at 317, 1425-1527, 1762-1814), he noted pulmonary function studies were normal, that her asthma was adequately managed with inhalers, that physical examinations were consistently normal, that a chest x-ray was negative, and that she had not been hospitalized for asthma (Tr. at 317, 1432, 1789, 1796, 1804, 1811, 1791, 1798, 1805, 1851). Regarding Claimant's moderately severe obstructive sleep apnea, the ALJ also noted that it had been managed with CPAP therapy (Tr. at 317, 1425-1527, 1999-2039).

In addition to his review of the opinion evidence, detailed *supra*, which demonstrated mild or normal findings, the ALJ ultimately found that Claimant's allegations concerning her impairments were simply inconsistent with the overall evidence, emphasizing that her back impairments had been managed conservatively with pain medication and physical therapy, surgery was not recommended, pulmonary functioning tests were unremarkable and that her leukemia remains essentially stable (Tr. at 318).

In Hines v. Barnhart, the Fourth Circuit stated that:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing Craig v. Chater, 76 F.3d at 595).

Recently, the Fourth Circuit emphasized the adjudicator's role in evaluating subjective symptoms: "an ALJ has the obligation to consider all relevant medical evidence and cannot simply

cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting Claimant's complaints.

The foregoing demonstrates that the ALJ in this case did not overinflate Claimant's capabilities while ignoring the evidence tending to support her allegations of functional limitations; the ALJ herein did not make factual misrepresentations or misinterpretations of the evidence of record in order to make a nondisability finding. Indeed, given the conflicting evidence consisting of Claimant's allegations of pain and other symptoms with the objective and other evidence of record, the ALJ is solely responsible for resolving the conflict; the issue before the Court is not whether Claimant is disabled, but whether the ALJ's finding is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Craig v. Chater, 76 F.3d at 589. In this case, it appears that the ALJ paid close attention to the

objective medical evidence from the relevant period, which included Claimant's reports concerning her pain and other symptoms, or lack thereof, as well as what helped her pain and other symptoms, and what did not relieve them; the ALJ then compared this evidence to Claimant's current allegations of pain and other alleged symptomology. In short, the ALJ's discussion involved a thorough review of the conflicting medical and other evidence requiring some reconciliation. It is also important to recognize that the law does not require one to be pain-free or experience no discomfort in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1996). In this case, the ALJ provided a thorough and adequate analysis of Claimant's subjective complaints that complied with the pertinent Regulations and case law. Accordingly, the undersigned **FINDS** that Claimant's contention that the ALJ did not properly consider the medical record in light of her "credibility" lacks merit; the undersigned further **FINDS** that the ALJ's assessment of Claimant's subjective complaints is supported by the substantial evidence.

Evaluation of Medical Opinion Evidence:

As noted *supra*, Claimant also appears to argue that the ALJ erred in his consideration of the opinion evidence as it relates to Drs. Nutter and Karam, insofar as Claimant's allegations are corroborated by the objective medical record, and more specifically, tend to be supported by the diagnoses and opinion evidence provided by the consultative examiners. (ECF No. 12 at 6) To the extent that Claimant argues that the ALJ failed to properly evaluate these experts' opinions, the undersigned notes that the ALJ explicitly applied the regulatory framework pursuant to Sections 404.1520c and 416.920c to claims filed after March 27, 2017. (Tr. at 314) On a related matter, the RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 Fed. App'x 226, 230-231 (4th Cir.

2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). In addition, the applicable Regulations provide that a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at §§ 404.1513(a)(5), 416.913(a)(5).

In this case, the ALJ properly applied Sections 404.1520c and 416.920c, which emphasize the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record; moreover, an adjudicator in not bound to give any specific weight or deference to any medical provider's opinion, including those provided by treating sources. Id. §§ 404.1520c(a), 416.920c(a). Instead of assigning weight to medical opinions, the ALJ now just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Id. Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). When discussing the finding about whether an opinion is persuasive, the ALJ need only explain how he considered "the most important factors" of supportability and consistency. Id. §§ 404.1520c(c), 416.920c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

With regard to the opinion evidence, the ALJ first addressed Dr. Karam's opinion, and

despite finding it vague to the extent Claimant would have difficulties with repetitive heavy lifting, he nonetheless explicitly found it persuasive, "because it comports with the mild imaging and generally good physical examinations." (Tr. at 317, 318-319, 1551-1557, 1736) With regard to the medical opinions[9] from state agency medical consultants at the initial and reconsideration levels of review, the ALJ also found them persuasive "because they are supported by the mild objective findings." (Tr. at 318, 742-752, 753-763, 764-774, 775-785, 788-802, 803-817, 1746, 1752-1761, 1871-1886, 1999-2039) Regarding Claimant's treating source opinion that she be excused from jury duty due to her leukemia and being immunocompromised, the ALJ determined it was not persuasive "because it is not consistent with the treatment[]" and "not supported by the objective evidence": Claimant's "lab results have shown normal or mild deficiency. Her oncologist noted that her blood counts have improved." (Tr. at 319, 1750, 1558) The ALJ explained further that the records showed that Claimant's leukemia "has been adequately managed with iron infusions and regular monitoring (Tr. at 319, 1558-1586, 1887-1998, 1999-2039, 2044-2077) and that imaging showed her lymphadenopathy is stable (Tr. at 319, 1835, 1910).

With respect to Dr. Nutter's consultative examination report, the ALJ did not explicitly determine whether any opinion therein was persuasive or not, however, as noted *supra*, he was not obligated to do so pursuant to the Regulations governing this decision. Nevertheless, the ALJ did expressly consider the findings in Dr. Nutter's report, including his observations of some pain and tenderness throughout Claimant's abdomen, tenderness to palpation of her paraspinal muscles of the lumbar spine and tenderness and decreased range of motion in both shoulders. (Tr. at 318,

[9] Both medical experts, Drs. Narendra Parikshak and Rabah Boukhemis, opined Claimant "can perform light work except occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently balance; occasionally stoop, kneel, and crouch; frequently reach overhead bilaterally; avoid concentrated exposure to extreme cold, wetness, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards."

1073-1080) The ALJ also noted Dr. Nutter found no masses or organomegaly, hepatomegaly, jaundice, ascites, spider angiomas, palmar erythema, asterixis, encephalopathy, or sensory abnormalities; normal reflexes; negative straight leg raise test; no shortness of breath, and that Claimant's pulmonary function study was normal – ultimately, the ALJ determined Dr. Nutter's report indicated "mild findings." (Id.)

In sum, the ALJ discharged his duty pursuant to the Regulations concerning the opinion evidence, noting how the opinions were supported by the evidence of record, while recognizing where they fell short of supportability; in addition, the ALJ reconciled where the opinion evidence was consistent and inconsistent with the overall record. The ALJ provided a thorough and adequate explanation for how he found the opinions persuasive or not, and properly considered them and incorporated them to the extent he found them supportive and consistent with the record in his RFC assessment. Accordingly, the undersigned **FINDS** the ALJ's evaluation of the opinion evidence is supported by substantial evidence.

The RFC Assessment:

As noted *supra*, Claimant conclusively asserts the ALJ's failure to properly consider the medical evidence of record caused an erroneous RFC determination. (ECF No. 12 at 8, 9)

A claimant's RFC represents the *most* that the individual can do despite her limitations or restrictions. See SSR 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC determination is an issue reserved

to the Commissioner. Id. §§ 404.1546(c), 416.946(c).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted); see also Felton-Miller, 459 Fed. App'x at 231.

To the extent that Claimant is arguing that the RFC assessment is not supported by substantial evidence, this Circuit has recognized that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (*per curiam*)). Instead, an ALJ " 'must build an accurate and logical bridge from the evidence to his conclusion.' " Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). In this case, the ALJ provided a comprehensive review of the record evidence, which included Claimant's testimony and subjective statements, her activities of daily living, the objective medical findings, her treatment history, and the medical opinion evidence (Tr. at 314-319); the ALJ also explicitly stated he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (Tr. at 312)

Although Claimant summarily contends the ALJ did not consider her numerous conditions, as mentioned above, she merely lists the various diagnoses throughout the record without any specific identification as to a related functional loss. See Gross, *supra*. Regardless, the ALJ did accommodate Claimant's credibly established limitations resulting from her impairments in the

hypotheticals to the vocational expert by restricting her as provided in the controlling RFC, *supra*. (Tr. at 314, 319)

Finally, regarding Claimant's argument that the ALJ erred by failing to find that she "grids out" pursuant to the Medical Vocational Guidelines, Rules 201.06 or 202.06[10], as observed by the Commissioner (ECF No. 13 at 10), and endorsed by the Regulations, the ALJ was under no duty to proceed beyond the fourth step in the sequential evaluation process because he determined Claimant remained capable of her past relevant work. In short, the ALJ did not have to perform an inquiry or analysis under the Medical-Vocational Guidelines because they did not apply in this case. See, supra, 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."); see also 20 C.F.R. pt. 404, subpt. P, app. 2, § 200 (explaining that the Medical-Vocational Guidelines are used when a claimant is unable to perform her vocationally relevant past work). While there is no dispute that Claimant would fall within the particular vocational factors endorsed by these Rules, as explained by the ALJ in this case, based on her impairments and her functional limitations observed by the medical and other evidence of record, Claimant remained capable of performing her past relevant work, therefore, she would not "grid out."

Although Claimant advocates for an alternate decision, as already stated herein, such are matters necessarily involving the resolution of conflicts in the evidence of record, and are evidentiary findings within the purview of the ALJ. In short, though Claimant may disagree with the ALJ's determination that she could perform light exertional work with certain limitations, this

[10] Pursuant to Rules 201.06 and 202.06, claimants are deemed "disabled" who are of "advanced age", have an education classified as "high school graduate or more", and with previous work experience that is classified as skilled or semiskilled, but the skills are not transferable.

Court cannot re-weigh this conflicting evidence or substitute its judgment for the Commissioner's. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also, SSR 96-8p, 1996 WL 3741784, at *7.

In short, the ALJ's narrative of the record included the objective medical evidence, such as imaging and examination findings, as well as the other evidence of record, including Claimant's own statements and testimony; the ALJ's thorough discussion of all this evidence, and the ultimate determination that Claimant remained capable of performing light work provided sufficient explanation allowing for meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). This Court is not "left to guess about how the ALJ arrived at [her] conclusions" therefore remand is not necessary. Id. at 637. Accordingly, the undersigned **FINDS** that the ALJ's RFC assessment is based upon substantial evidence.

New and Material Evidence:

On December 17, 2020, the Appeals Council determined that the evidence dated prior to July 2, 2020 that was submitted by Claimant did not show a reasonable probability that it would change the outcome of the ALJ's decision; accordingly, the Appeals Council denied Claimant's request for review and did not exhibit the late-submitted evidence (Tr. at 1-7). Regarding the evidence post-dating July 2, 2020, the Appeals Council noted that the ALJ decided Claimant's case through July 2, 2020, and the additional evidence did not relate to the period at issue, and therefore does not affect the decision as to whether Claimant was disabled beginning on or before July 2, 2020 (Tr. at 2).

Social Security Regulations allow two types of remand. Under the fourth sentence of 42 U.S.C. § 405(g), a court has the general power to affirm, modify or reverse the decision of the Commissioner, with or without remanding the cause for rehearing for further development of the

evidence. 42 U.S.C. § 405(g); Melkonyan v. Sullivan, 501 U.S. 89, 97-98, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). Where there is new medical evidence, a court may remand under the sixth sentence of 42 U.S.C. § 405(g) based upon a finding that the new evidence is material and that good cause exists for the failure to previously offer the evidence. 42 U.S.C. § 405(g); Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163. The Supreme Court has explicitly stated that these are the only kinds of remand permitted under the statute. Melkonyan, 501 U.S. at 98, 111 S.Ct. at 2163.

Pursuant to 42 U.S.C. § 405(g), remand is warranted "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" Evidence is "new" if it is not duplicative or cumulative. Wilkins v. Secretary, Dep't of Health & Human Serv., 953 F.2d 93, 96 (4th Cir. 1991) (*en banc*). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Id. The Regulations governing the circumstances under which the Appeals Council is to review an ALJ decision shows that additional evidence will not be considered unless the evidence is new and material and relates to the period on or before the date of the ALJ decision. See 20 C.F.R. § 404.970(a)(5) (emphasis added). This does not mean that the evidence had to have existed during that period; rather, evidence must be considered if it has any bearing upon whether the claimant was disabled during the relevant period of time. See Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987); Cox v. Heckler, 770 F.2d 411, 413 (4th Cir. 1985); Leviner v. Richardson, 443 F.2d 1338, 1343 (4th Cir. 1971). "Pursuant to the regulations . . . , if additional evidence submitted by a claimant does not relate to the time period on or before the ALJ's decision, the evidence is returned to the claimant, and the claimant is advised about her rights to file a new application." Adkins v. Barnhart, 2003 WL 21105103, *5 (S.D.W. Va. May 5, 2003).

Additionally, the Appeals Council "will only consider additional evidence" that satisfies the requirements of Sections 404.970(a)(5) and 416.1470(a)(5) if the claimant also shows "good cause" for not informing or submitting it to SSA prior to the hearing for the following specific reasons:

> (1) our action misled you;
>
> (2) you had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>
> (3) some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
>
> > (i) you were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
> >
> > (ii) there was a death or serious illness in your immediate family;
> >
> > (iii) important records were destroyed or damaged by fire or other accidental cause;
> >
> > (iv) you actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or
> >
> > (v) you received a hearing level decision on the record and the Appeals Council reviewed your decision.

Id. §§ 404.970(b), 416.1470(b).

Where evidence is not new, material, does not relate to the period on or before the hearing decision, does not create a reasonable probability that it would change the outcome of the case, or there is no good cause for failure to submit the evidence earlier (*e.g.*, unusual or unexpected circumstances such as death, illness, destruction of it by fire, or confirmation that the claimant actively and diligently sought evidence from a source who would not provide it earlier), the

Appeals Council will send notice explaining why the evidence was not accepted and advise the claimant of his right to file a new application. Id. §§ 404.970(c), 416.1470(c).

There is no dispute that the Appeals Council informed Claimant of these pertinent Regulations by its notice dated December 17, 2020. Indeed, the Appeals Council advised Claimant that she "must" show that the additional evidence is new, material, relates to the period at issue, and shows a reasonable probability of changing the outcome of the hearing decision, and that Claimant "must show good cause" for why he missed informing the agency about the evidence or submitting it earlier. (Tr. at 2).

As noted by the Appeals Council, the additional medical records predating July 2, 2020 submitted by Claimant consisted of the following: Valley Health dated June 25, 2020 (Tr. at 81-85); Cabell Huntington Hospital dated March 17, 2020 (Tr. at 646-736), May 16, 2020 (Tr. at 558-638), and March 22, 2020 to June 3, 2020 (408-525); and Marshall Health dated May 6, 2020 to June 3, 2020 (Tr. at 369-407) and May 26, 2020 to July 1, 2020 (Tr. at 104-106, 328-368). As an initial matter, there has been no indication by Claimant as to why this evidence was not submitted during the prior proceeding, and no such explanation was provided to the Appeals Council.[11] Claimant has provided no reason or argument that he meets any of the other specific good cause definitions outlined in 20 C.F.R. §§ 404.970(b), 416.1470(b). See Scherer v. Berryhill, No. 2:17-CV-53, 2018 WL 1960531, at *3 (W.D. Va. Apr. 26, 2018) ("Without the plaintiff falling into one of these good cause exceptions, the Appeals Council had no such duty to review the [additional]

[11] Notably, the ALJ acknowledged a letter dated May 18, 2020 from Claimant's representative (Tr. at 1064) that additional records were requested from St. Mary's Hospital covering a period of December 29, 2019 to the present; Huntington Internal Medicine Group covering the time period of July 19, 2019 to the present; and Cabell Huntington Hospital covering the time period of March 23, 2020 to the present. (Tr. at 307) The ALJ noted that these records were to reflect Claimant's "ongoing problems with chronic lymphoma leukemia, rheumatoid arthritis, COPD, asthma, and hyperparathyroidism. (Id.) However, the ALJ also noted that Claimant failed to satisfy her burden to inform him of the outstanding records in compliance with Sections 404.935(a) and 416.1435(a). (Tr. at 307-308)

evidence.”). In any event, from the undersigned’s review, it is clear that none of this additional evidence demonstrated a reasonable probability that it would have changed the outcome of the ALJ’s decision, as these records showed Claimant continued to receive routine and conservative treatment for her multiple chronic conditions, with unremarkable physical findings. As such, this additional evidence is merely cumulative and duplicative of the evidence already considered by the ALJ. See Davis v. Barnhardt, 392 F. Supp. 2d 747, 750 (W.D. Va. 2005) (“new” evidence must not be cumulative or duplicative of evidence already in the record).

Regarding the additional evidence that post-dated the ALJ’s decision from: Valley Health, dated August 7, 2020 to August 13, 2020 (Tr. at 86-96); CHH Center for Lung Health, dated July 27, 2020 (Tr. at 273-303); Cabell Huntington Hospital, dated July 28, 2020 (Tr. at 241-272); St. Mary’s Medical Center, dated July 26, 2020 to August 7, 2020 (Tr. at 107-224); Huntington Internal Medicine Group, dated August 4, 2020 (Tr. at 225-240); and Marshall Health, dated July 16, 2020 to August 19, 2020 (Tr. at 13-74) – the Appeals Council correctly observed it had no relation to the period at issue, and invited Claimant to reapply for benefits (Tr. at 2). Pursuant to the plain language in Sections 404.970(a)(5) and 416.1470(a)(5), the Appeals Council only considers evidence that “relates to the period *on* or *before* the date of the hearing decision[.]” (emphasis added) Accordingly, the Appeals Council properly disregarded the post-decision submission. See Shuman v. Berryhill, No. 3:16-CV-62, 2017 WL 3476972, at *4 (N.D.W. Va. Aug. 14, 2017) (“Because the Appeals Council concluded that this evidence did not relate back to the period on or before the ALJ’s decision, it was not required to be considered and was properly excluded from the record.”).

Regardless, as pointed out by the Commissioner, a treatment note dated July 20, 2020 states that Claimant's ECOG performance status was rated a "1 – No physically strenuous activity, but ambulatory and able to carry out light or sedentary work (e.g. office, work, light house work)[]" – this does nothing to advance Claimant's appeal on this issue. (ECF No. 13 at 13, citing Tr. at 57) Clearly, the ALJ's RFC assessment, and his finding that she remains capable of performing her past relevant sedentary work, were on point.

Accordingly, the undersigned **FINDS** that Claimant has simply failed to demonstrate that the additional evidence he submitted to the Appeals Council would have had a reasonable probability of changing the outcome of the ALJ's decision.

Finally, the undersigned further **FINDS** that the ALJ's analysis of the evidence of record, and the final decision denying Claimant's applications for benefits are also supported by the substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for reversal or remand (ECF No. 12), **GRANT** the Defendant's request to affirm the decision below (ECF No. 13), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of

objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: August 27, 2021.



Omar J. Aboulhosn
United States Magistrate Judge